All you patent lawyers have had a nice lesson in Veterans Administration. May it please the Court, after a trial in the Court of Claims, the District Court erred in refusing to award compensation to plaintiffs based on the infringing use by the government of her patented process to the tune of $45 million that it received in funding and ultimately spent researching the process which infringed her patents. Okay, I have a, let me ask you about that. I'm not going to, I assume your argument is about experimental use and this is not. Let me just go to the point where the guidelines seem to suggest in this case, and I think the experts confirmed, that there was a reasonable royalty for future sales of about 3 to 7%. Am I right about that? No, the government's expert did not address any reasonable royalty, said no royalty was appropriate because all of the uses were not commercial and were for research. So there was no royalty base and no royalty appropriate. The only evidence on a reasonable royalty that was put in was from our expert which was 8 or 10%. Well, I'm not talking about the royalties to which your client may argue she's entitled with respect to the research stuff. I'm talking about future royalties, right? I mean, beyond this time, let's assume there is some commercial use or something your client would be eligible for. The Court of Federal Claims seemed to have said that he doesn't have jurisdiction. He made it to award relief for future infringement and in that regard, he cited a 1981 Court of Claims case. Yes. Do you agree with his recitation of the law? I don't know. It's a question to me. One, I think the guidelines seem to suggest that you can get royalties for future sales and so I'm not clear on what the Court of Claims was saying. So I guess there's two issues, obviously, one, the only evidence as to a royalty, as to what a royalty would be for the existing sales, the existing revenue as well as future was the 8 to 10% that was put in by our client, or put in by our expert. There wasn't any evidence as to what constitute a reasonable royalty that was put in by the government. So in terms of to answer your question in terms of what was the royalty. What about the legal proposition about whether or not the Court of Federal Claims had jurisdiction to award? Let's take off the tape. Let's assume there hasn't been any commercial sale and there would be no basis for awarding a retrospective royalty for any of this, what we call experimental stuff or whatever. But let's just talk about the future or do you just assume that it doesn't matter? Do you care about that? Because you assume that if there are future commercial sales and this case stands, you'll be able to come in in the future and get a reasonable royalty? Well, I think in part, Your Honor, but the other part too is the unique aspect of Oakridge. There's never going to be any commercial activity on their part. They're a research institution. Okay. So to you, this isn't a relevant issue. I mean, we were seeking the future sales or future revenue for which we were seeking a royalty was to continue the existing royalty that we believe is entirely appropriate based on the research that the government has done using the invention. I mean, the statute 1498 doesn't require sales. The statute requires compensation to the plaintiff when their invention is used or manufactured. And here, that's exactly what the government did. The government used her patented process and received $45 million that were specifically earmarked to allow them to engage in the research which was deemed by the lower court to be an infringement. So in our view, however you characterize it, we actually believe that their use is commercial under the MATA case or at least would be characterized as commercial under the MATA case because it's in furtherance of their legitimate business interests. Their business interests are to perform research, research that will then generate more funding, research that will generate accolades for the researchers which will then allow them to secure more funding. But nonetheless, even if it is deemed to be not commercial, not only the statute but the Roche case out of this court as well as the Pitcairn case mandate that even if it's deemed to be for research purposes, compensation is owed to the plaintiff for that use. And so the statute doesn't allow for any exceptions. There's no exceptions for research for drug companies. There's no exceptions for research for the military. In this particular case, when we're dealing with research for the public good, there's no exceptions as well. And that's made clear by the Roche and Pitcairn cases as I mentioned. The district court also erred on the damages issue on another matter. It abused its discretion in refusing to allow plaintiffs to obtain information on certain projects that were being handled by the principal researcher, Dr. Lucca, whose process was deemed to infringe the patent. And it refused to allow plaintiffs access to even take any discovery in that information because it threw the burden on us to demonstrate that these projects were relevant. But the government objected to these producing information because it deemed that these projects were classified. Well, how are we going to be able to get any information to determine whether or not they are or are not relevant or what it is based on information if it's classified, or at least they're objecting based on classified? So we have some concerns with that, but the evidence that we did gather demonstrated that the information is likely relevant. First of all, we had the main inventor, Dr. Lucca himself, telling Ms. Walker that he had used his process, the infringing process, in connection with classified projects. We also have him submitting reports and progress reports to his management detailing what he expects to do for the coming year. And in 2011 alone, he identified that his process, the one that infringes and the one that we're trying to take discovery on, it had application in various government projects to the tune of over $100 million in 2011 alone. And then we also have at trial, even though the judge refused to allow us to take testimony to follow up and explore on certain information, and notably, he didn't refuse to allow us to get into this information because it was classified. He said it was only because we didn't demonstrate that it was relevant. The other inventor, part of Dr. Lucca's team, or the other researcher, the part of Dr. Lucca's team, when asked at trial whether or not Dr. Lucca was still practicing the TMP process, his response was, I'm not sure I can answer that because the answer is classified. Clearly if he's not using the infringing process in connection with classified information, he would be able to answer that question. So the information and evidence strongly suggests that the government is indeed using the infringing process in connection with classified projects, and we offer to take that information if it's truly classified within a classified or secret closed hearing. We were denied that opportunity to take discovery, and we believe that the court abused its discretion on that, as well as committing legal error in extending the experimental use defense on damages. Thank you. I'll reserve the rest of my time for rebuttal. And just cross-appeal here. Yes. Okay. Mr. Hoskin. Thank you, Your Honor. May it please the court. Just to start, I would like to, I guess, answer quickly your question regarding the guidelines, and we do believe that 1498 is different than 271. So yes, the court has a very limited jurisdiction, the Court of Federal Claims, and it first has indicated it can only adjudicate claims of use by the government, but there is also, because it is a takings type of, or eminent domain type of statute, there is this limitation that it only addresses past damages as well. That strikes me as very odd, because under the government setting, and a few months ago I had this in the front of my brain, and it's no longer there, but I thought in the government you treat it as if there's some license that the government has. Well, if you're talking about the value of that license, and there's the potential for future as well as current commercial sales, wouldn't there be a reasonable royalty involved, and wouldn't that, by definition, include future and not just current or past sales? So that's what I'm confused about. I think, in a sense, Your Honor, in a different situation, a running royalty that would be adjudged in a case where the government is already buying a device may very well be the future royalty should be, and certainly I am certain that there are cases where the government has then gone ahead and paid damages for future sales, but not part of the judgment, but as a separate action when they go ahead and buy stuff. So suppose that the government was currently selling these products, currently selling them, this Oak Ridge Labs, and the government, they were selling commercial products, and you were going to continue selling them tomorrow, and the next day, and the day after that. Are you telling me that under the jurisdictional statute, this patentee could only recruit the reasonable royalty for the sales you made up until the point of the judgment, and even if you were agreeing, you were planning on continuing to sell these products, the Court of Federal Plans would lack jurisdiction to say, and you must pay a reasonable royalty of the same percentage going into the future for the future sales? As I indicated, yes, that is our understanding of the law. Now, as I also indicated- Anything beyond the Court of Federal Claims cited one 1981 Court of Claims case, do you have any other cases? No, Your Honor, but I would point the Court maybe to, for instance, Lisona, which is kind of the case that everybody considers as defining case law in 1498, and it is kind of limited, but now, obviously, as I indicated also, and I think, Judge Moore, that this may relieve some anxiety on your part, is that, yes, we do look at the judgment, and if the court comes down with a judgment and says that the dollar value is running royalty of X dollars per item, certainly the government doesn't have a great deal of interest then in future events, whether sales are not really included in 1498, but certainly any use by the government, if we go ahead and buy and use another device, we don't have a great deal of interest then in necessarily going and re-litigating that issue for the X plus one item after the judgment. Okay, so why is your friend wrong that you're not using that currently? Excuse me? That getting, using this to obtain significant investment in terms of grants, et cetera, why is that not a compensable use? Well, it was, it is compensable, and the judge did find compensation in the amount of $200,000. But that doesn't account for the amount of money that's being obtained in terms of grants and so forth based on the use. And as the court- Am I right about that? Well, it has no relationship on a numeric value to the compensation. And I think the answer to that is, as the court found in Riles, that the sound economic proof argument was what the court relied on and certainly what the government also offered. And that is that plaintiffs have never shown that anybody ever pays a royalty on research dollars. And there's a good reason for that. Because if you are doing research on a new device, then there's no dispute that in this case, there is no use of the Oak Ridge process currently commercially. So they're doing pure research. If you are taking research dollars and paying a royalty, that just takes away from the research. Wait a minute, time out. Are you suggesting to me, suppose this wasn't the government? Because these patent law principles are cross cases. There's nothing unique to the government about this principle. So suppose you have one pharma case, one pharma company, that invents a big technology. Then you have a second pharma company that uses that big technology and starts experimenting with how maybe it can commercialize it. It hasn't actually sold anything or even realized any commercial dollars by virtue of its use yet. See here, you actually got a grant that's tied to the use. But in my example, there isn't even revenue that has come in directly to the second pharma company by virtue of its use. It's using it to come up with some potential commercial product. Are you telling me that use is not compensable under patent law? I am saying that those two, your two examples, the pharma company that funds its own research, and our situation where there is grant research, are essentially identical. The reason that companies and patent owners don't generally get anything more than some kind of a minimal or flat rate royalty during the research period is because that research dollar, if it's taxed for royalties, then just depletes your research money. And that is counterproductive for most patent owners. I think you might be onto something here because to me, I will tell you that I think there ought to be compensation to a patentee for research use of their technology. But maybe that compensation isn't tied to a research grant. And maybe the way this case was argued to the judge below left him with what might be a correct decision in light of the way it was argued. I think my problem might be that the comparables that were used, the three licenses which had up to the $200,000 upfront, all of those were in fact commercialization licenses. And so that $200,000 was the starting point, but there was absolutely an expectation of commercial sales that would result in additional monetary compensation for the patentee. And we submit that our situation here is no different. When it goes to commercialization, which most likely is not going to be by the government, but when it goes to commercialization, if the patent is valid and if the process does, in fact, whoever is using that process is going to be paying a royalty. And that's where... But do you think that the research company that is using it to develop the commercial product it will later make money off of gets to use it pretty much free and clear? Well, I think in this case that the problem is that what the court actually found is that the only damages that were proven was the $200,000. And now, I think on different facts, on different evidence, the court may have reached a different result, and it may very well have come up with some different dollar amount. But at least on this case... I want to make clear that I don't think that either the court nor the government took the position that that's the only thing that the court could award. The court ended up at the $200,000 amount based solely on finding that the remainder of plaintiff's damages were unproven. Unless there's further questions, I'll move to the government's cross-appeal. And we have a number of issues. Excuse me, could I ask you, not to divert you from where you were going, one issue, the claim construction issue. Yes. With respect to the claim term Marshall-Miller relationship. Correct. And correct me if I'm wrong, but it seems to me that your whole focus on that point is with respect to what you say happened during the prosecution history. That's correct. You don't focus at all, either as far as I could tell, either in your opening brief or your reply brief on the point, on specific parts of the specification. Why was that? Because normally that's where one looks first, and I was struck by that in your argument. The specification, and we readily admit that the specification actually uses the term Larson-Miller very broadly, and in fact I think there's one portion... It cuts against you. It does. But what it comes down to is that if you, because of the amendment that was done in prosecution, if Larson-Miller is read as broadly as it is in the specification, then particularly claim one, element J, becomes circular. It just says that a first-order rate relationship is a first-order rate relationship. Let me ask you this. Assuming for the moment, I realize you would disagree with this proposition, but assuming for the moment one were to not accept your reading of the prosecution history, or were not to give it the weight that you give it, do you lose then on the Larson-Miller relationship claim construction issue? That's a tough one, Your Honor, but I would have to say... Sorry to give it to you, but it kind of... It's sort of posed by the way you presented the case. I'm not criticizing it, but it's just... It necessarily is there. Yes, I would have to say we would have to lose on that claim construction issue, because I think that... Now, as I indicate, I think that creates definite problems later on in terms of infringement, and certainly even more so in terms of the 101 argument. But as to the claim construction argument, we would certainly lose that one. Okay. All right. Thank you. That's a candid answer. I appreciate it. Thank you. Turning then... Actually, that was pretty much all of my first claim construction argument anyway. So turning then to the selected according to, which I think is actually the more important of the two.  with the selected according to argument is that the court's definition essentially reads that out of the claim. And... You just have to... If you're going to select something according to a factor, you have to know what that factor is, and you have to know what the scorekeeping device is, as Dr. Wagner called it. And that's kind of where the court fell down here, is that... The court just essentially eliminated the according to part of it. And all it had... All the court had to do is... is find that the results were consistent with a Larson-Miller relationship or a first-order relationship, and the court found that it was... that if that were the case, then there would be infringement. We just can't see that. If you're going to do something according to a criteria, you have to know what the criteria is and how to apply it, and the court just eliminated that. Turning down... How does that play, then, into the infringement analysis? Well, it broadened the infringement analysis to the point that the prior art, which was just using vibration and thermal energy, is infringing. Because if you don't have to know what the relationship is, and if you don't have to make your settings based on that relationship, then all you're doing is practicing the prior art. You're just doing it based on what you know works. And that brings us to the Alice argument. The one-on-one argument. But your time is about to expire. I see. So I think we'll take that on the briefs. Okay, thank you. I'll start with a couple points and questions that were raised on the issue of damages. Let's start with the proposition, as I said before, to reiterate. The government was never going to commercialize this invention. That's not what they do. Their objective is to obtain funding for research. And the funding in this particular case, as it is, was earmarked and specifically tied for their use. They couldn't practice the invention absent receiving funding. That's the testimony of the record. They had to go and get funding to be able to infringe. There's no better way to measure the value of what it is that they took than to measure the funding that they received and also the costs that they spent, which was match the funding, for their use. But there was other evidence in the record. I also disagree with counsel. I think the question or the response he said was that the government never argued that the $200,000 was the only way to compensate plaintiffs. That's not correct. That's all that they argued plaintiffs were entitled to because the remainder of the use in their view was not for commercial purposes. It was for research. And that's what the court adopted. As the court began to go through its reasonable royalty analysis, when it got to licenses, it stopped. It said none of this constitutes part of a royalty base because it's not commercial, which is against the statute and which is also against the law. We're entitled to no less under the law, even though it's 1498, a reasonable royalty. And there was evidence of record. If you didn't want to apply it to funding, there were yearly milestones that the testimony was of a million dollars a year that could have been awarded based on the use. The error the judge basically made by limiting us to $200,000 is it bears absolutely no relation to the extent of the use. It's been going on seven, eight years now and it's going to continue in the future based on the testimony that was at trial. At least there was no evidence that they were going to stop using it. $200,000 is far from a reasonable entire compensation required under the statute. Judge, can I ask you one question in response to the little colloquy I had with opposing counsel? Let's assume for the moment one accepts the Court of Federal Claims construction of the Larson-Miller relationship, but one were to disagree with the according to point. You know which one I'm talking about. Where would that leave you in the case? Well, first of all, their proposed construction of the selecting according to, in our view, is based on the incorrect, and the infringement is based on the incorrect claim construction. But regardless of what the claim construction is, the judge demonstrated and cited evidence that they were using selecting settings according to the ways described in the specification. The specification, and as also testified to by Dr. Wagner, settings can be selected theoretically, by an equation, also empirically, by plots and graphs of data, as well as by experimentation. This is in the specification, testing various samples at different times and temperatures to achieve desired physical property changes. And what they were doing is they were selecting this to achieve an acceleration, which is the heart of the invention, as the judge found. I hate to use that term, but that was what the novel and unexpected result was by her process, was you're combining these two energies in a way, and you're selecting settings for this combined diffusion process that results in these physical property changes being so accelerated from days to hours, from hours to minutes, that resulted in such substantial energy savings that even the researcher from the government received all sorts of accolades through the Department of Energy when he highlighted what the potential benefits would be. I think the claim construction is absolutely correct based on the intrinsic evidence and based on the testimony of Dr. Wagner, as well as Larson-Miller themselves. This is exactly how in their paper, the seminal paper which defines the Larson-Miller relationship, how they selected their settings, which was through experimentation. That's exactly what the claim says in terms of how the settings were selected in order to achieve this acceleration by selecting the settings for the two energies. Thank you. I want to address the last point that the government made with respect to Larson-Miller. The three ways that I just mentioned for selecting the settings are also the three ways disclosed expressly within the patent specification for determining what the relationship is. Again, you can do it by an equation, but it's not required. The principal way discussed is for experimentation in a lab setting, determining what the relationship is through trial and error to determine what settings that you want to achieve the accelerated desired physical property change that the researcher is looking for. Unless the court has any questions, I think we've addressed the points we'd like. Thank you. You've already exhausted your time, so we're not going to restore any. I think we have the argument. Thank you both. The case is submitted.